Per Curiam.

We'áre clearly of opinion, that the' general sessions of the peace is in every respect to be ■ |*180] ^considered, as a court of inferior jurisdiction. In ' its original organization it was created an inferior Court, subordinate to this court, arid "subject to its cont-ro.l. In the colonial system it had no other pretension, and nothing In our constitution or laws has given it a different character.. New powers have been granted to itbut they were express *221 ly granted by statute, and do not change the essential nature and constitution of the court. It is still limited in its jurisdiction both as to local extent, and the nature of the offences it is empowered to try. Its very constitution shows, that it was designed and ought to be regarded as an inferior court. It is generally composed of justices who, from the manner of their appointment and the tenure of their offices, cannot be expected to devote themselves to the science of the law, and do not feel that high responsibility which is attached to courts of general jurisdiction.
It has always been considered and treated as an inferior court, subject to the general superintendence of this court. Writs of error, certiorari, mandamus, and attachment, issue to it from this court. These writs conclusively show it to be subordinate, and prove the authority which has always been exercised over it.
It is fit and proper, that the courts of general sessions of the peace ih the different counties should be under the control of a superintending jurisdiction. These courts are wholly independent of each other, and if their proceedings were not subject to be here reviewed, we might find different rules of law and of justice in almost every county. This-would introduce disorder and confusion, and be inconsistent with a regular and uniform administration of justice.
The power of granting new trials can only be applied in a manner which precludes the possibility of its exercise being reviewed in this or any other court. It is a power of a very delicate nature, exercised on the motion of the party only. Its exercise in practice does not¡ and frequently from its nature and difficulty could not, be made *to appear [*181] on the record. If this power, therefore, did exist in an inferior court, it would exist without regulation or control, and the idea of an uncontrolled power residing in an inferior jurisdiction is absurd. 'The jurisprudence of every country requires a regular gradation of courts and a common centre of judicial power. This is essential to its existence, and to preserve consistency and harmony in the administration of j ustice.
*222 The general sessions in this state are more analogous to • the sessions in England, than to any other courts. These are considered as inferior courts, and denied the power of granting new trials. Indeed no inferior jurisdiction can possess this power without an express authority. It can derive nothing by inference or implication.
Besides, this is a case of felony in which considerations of policy and expediency would prevent this court from granting a new trial. In such cases, the usual course is to recommend the convict for pardon. It is, therefore, an instance to show that the power of granting new trials if vested in an inferior court, would probably be often very indiscreetly exercised.
We are, therefore, of opinion that a mandamvs ought to be awarded.(a)
Rule made absolute.

 The opinion of the court in this case is reported in 2 Caines’ Cas. in Err. 319, rather more fully and explicitly, than it is here given. No apology lis required for inserting it.
" Per Curiam, delivered by Kent, J. Let the mandamus go. The sessions cannot grant a new trial upon the merits. It is a power not exercised by this , 'court, after verdict in cases of felony, and perhaps it is expedient it should not be. This «court had by its original constitution by ordinance, the superintending control of all inferior jurisdictions within the state, and this power bas never been taken away. It has been from time to time recognized by ■law, and in constant -and vigilant exercise. All courts within the several ■counties have, from the first foundation of our judicial system, been regarded by law and by practice as inferior courts ; they can be compelled to duty by ;a mandamus ; they can be restrained from usurpation by prohibition.(*) The -causes and pleas before them, can be arrested and removed by habeas corpus or certiorari, and their judges can be attached, brought before this court, and ¡punished for disobedience. All these are distinguished and essential marks of supremacy in the one court, and of inferiority in the other ; they are, •therefore, within the reason and meaning of the law, inferior courts, and ¡such courts are not entrusted by law, with the power of setting aside verdicts <of juries upon the merits. It has been the uniformly received usage and understanding on the subject, until very lately, that that power was exclusively confided to this court; it can neither be taken from this court, nor assumed by the sessions without express words.

 Prohibitions are ex debito justicies, when an inferior court acts without jurisdiction. They will lie to courts martial. See the Case of Grant, 2 H Black. 69.
*223 “ There are strong reasons for the law withholding the power from the courts of general sessions of the peace. All the justices of the peace, within the county, are judges of the court. This renders it a very numerous tribunal, and divides and weakens the ■ responsibility of the members. The justices are laymen, and cannot be supposed to have been taught or trained in the science of law. The power of awarding new trials on the merits, is a power necessarily resting in sound legal discretion. The reasons of the exercise of that discretion, are not stated on the record, and are not susceptible of review by this court. The power maybe grossly abused; different principles and contradictory practice may be assumed in different courts ; verdicts may be set aside, ad infinitum, till juries are worried into submission ; they might be set aside where the prisoner is acquitted, as well as convicted, and the power thus unlimited and unreviewed, might go to the destruction of trial by jury ; to overturn the rights of the citizen; to shake the stability of government, and destroy all system and harmony in our jurisprudence.
“I am, with perfect satisfaction, of the opinion, that this great and transcendant trust, rests solely with this court; a court which the constitution and law has taken care so to organize, as to contemplate it fit and competent, for the due and safe exercise of this very delicate power. We cannot alienate . any part of our trust; we are responsible for its safe keeping, and that no waste be committed On a power we hold for the security of our citizens, in their liberties and estate.”
“ This decision rests on the undoubted principle that it is the province of the supreme court, to enforce obedience to the statutes, and oblige subordinate courts and magistrates, to do those legal acts which it is their duty to do. Upon the same principle rest the decisions of Fish v. Weatherwax, 2 Johns. Cas. 215. Haight v. Turner, 2 Johns. R. 371. Sikes v. Ransom, 6 id. 279. Horne v. Barney, 19 id. 247.” Per Tracy, Senator in Judges of the Oneida C. P. v. The People, 18 Wend. 79, 95. See also note to Fish v. Weatherwax, ubi sup.