By the Court. Vanderpoel, J.
Some objections were taken to certain testimony offered by the defendants, and sustained by the judge at the trial; but as the ground on which we have concluded to dispose of the case, is broad enough to strike at the whole defence, and the evidence rejected, if admitted, could not, in our view, have varied the result to which we have come; I shall forbear to discuss the question, whether the judge was right in rejecting the testimony offered and overruled.
We see no difficulty in the claim of the plaintiffs, unless the same is barred by the proceedings to open Ann street. The several deeds and other matters given in evidence on the part *106 of the plaintiffs, established their title to the premises in question, in the proportions described in their declaration.
. The principal question is, whether the proceedings of the corporation to widen Ann street, and the appropriation of the premises by them, divested the plaintiffs of their title, and vested the same in the corporation, under whom the defendants claim.
The commissioners proceeded under the 179th section of the act to reduce the laws of the city of New York into one act, (2 R. L. 416,) which provides in substance, that where only part of any lot or parcel of land shall be required for any improvement, leaving a residue, and the commissioners shall deem it expedient to include or comprise in their estimate and assessment the whole or a part of such residue, and shall so include it, then, on the confirmation of the report, the whole or part of such residue, so included in the assessment, shall be vested in the mayor, aldermen, and commonalty of the city. The premises in question were included in the assessment; the report of the commissioners was duly confirmed, by reason of which the defendants, who hold under the corporation, claim that the title became vested in the corporation.
Upon this point, we find an express adjudication in The Matter of Albany Street, (11 Wend. 149.) Chief Justice Savage, in commenting on the section under which the corporation has proceeded, says, that “ The constitution, by authorizing the appropriation of private property to public use, impliedly declares, that' for any other use, private property shall not be taken from one and applied to the private use of another. It is in violation,” he says, “ of natural right; and if it is not in violation of the letter of the constitution, it is of its spirit, and cannot be supported.”
The constitution of 1777, did not delegate any authority to the legislature to take the property of one person and give it to another, with or without compensation. It ordained and declared, that the supreme legislative power within the state should be vested in the senate and assembly; (Art. 1 of Const, of 1777;) but this surely conferred no right to attack private property for private purposes. It also (Art. 13,) declared, that no member of the state should be disfranchised or deprived of *107 any of the rights or privileges secured to the subjects of the state, unless by the law of the land, or the judgment of his peers. The words “ by the law of the land,” have been held to mean “ by due course and process of law.” (Taylor v. Porter, 4 Hill, 140.) They do not mean, a statute passed for the purpose of working the wrong. (Ibid. 145.) Justice Bronson, in the above case, holds that the section was taken, with some modifications, from a part of the 29th chapter of Magna Carta, which provides, that no freeman shall be taken or imprisoned, or be disseised of his freehold, but by the lawful judgment of his peers, or by the law of the land. (2 Story on Const. 661, § 1783.)
But if this part of the act of 1813, were within the constitutional powers of the legislature, at the time of its enactment, the constitution of 1821 abrogated it, by declaring that private property should not be taken for public use, without just compensation. (Const. of 1826, Art. 7, sec. 7. Matter of Albany Street, 11 Wend. 149. Bloodgood v. Mohawk and Hudson R. R. Co., 18 Wend. 59. 19 Wend. 659, 675. Taylor v. Porter, 4 Hill, 140.)
In Bloodgood v. The Mohawk and Hudson R. R. Co., (18 Wend. 59,) Mr. Senator Tracy says, these words of the constitution should be construed “ as equivalent to a constitutional declaration, that private property, without the consent of the owner, shall be taken only for the public use, and then only upon a just compensation.” Justice Bronson, without questioning the soundness of this view, seems to think that the case stood stronger upon the first member of the clause, “ No person shall be deprived of life, liberty, or property, without due process of law holding that these words cannot mean less than a prosecution or suit, instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property. We are, therefore, on the most conclusive authority, bound to say, that the provision of the act of 1813, under which the corporation, or the commissioners in their behalf proceeded, in respect to the premises in question, is unconstitutional.
2. It is contended, that the plaintiffs, by receiving from the *108 corporation the amount awarded hy the commissioners, and by yielding up the premises to them, are estopped from denying the validity of the proceedings under which the premises were taken, and have, by those acts, given a binding consent and ratification'to the proceedings.
This strikes us as the only question in the cause worthy oí serious consideration ; the former having been previously ruled in direct terms.
In undertaking to take the property in question, the commissioners assumed to exercise the power conferred upon them by this unconstitutional act. The report of the commissioners does not proceed on the ground, that they had taken the portion of the lot in question, which was not required for the widening of Ann street, with the express assent of the plaintiffs. On the contrary, the corporation proceeded on the ground that the title of the plaintiffs was divested by the confirmation of the report, whether they consented or not. The statute in question does not provide for any parol assent; and sitting in a court of law, we cannot see how any such assent which might have been given by the plaintiffs, could have operated to divest their title to the land. The statute of frauds, (2 R. S. 134, § 6,) provides, that no estate or interest in lands, other than leases for a term not exceeding one year, shall be created, unless by act or operation of law, or hy deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or his agent, authorized by writing. This creates an insuperable difficulty in the way of the defendants. There is no estoppel by deed here, nor is there any thing in the acts of the parties to constitute an estoppel in pais. The acceptance by the plaintiffs of the money awarded by the commissioners, could not divest the legal title of the plaintiffs to the land in question, nor constitute an estoppel in pais, to preclude them from asserting their title. The plaintiffs were clearly entitled to part of the money awarded to them. It was assessed or awarded to them as an entire sum; nor was there any right to apportion it; neither could they say to the corporation, “ We will take part of this money, just enough to cover the land you actually appropriated to public use, and ■ reject the. residue.5’ *109 They had no means of ascertaining the amount due for that portion of the land, as to which their title became divested, by the confirmation of the commissioners report. They were obliged to take the whole or none. The corporation did not take or sell the premises on the ground, that the plaintiffs had accepted the sum awarded; for they sold and conveyed to the defendant, J. Conner, before the money was paid to the plaintiffs. We cannot say that the corporation would not have taken the land, had the plaintiffs refused to accept the amount awarded to them. On the contrary, they claimed the right to take and sell the land, the moment the report was confirmed, and before the award was paid.
The legislature had thrown these owners helpless, at the feet of the commissioners. According to the act, they had no option to part with their property or not. No act of theirs, induced the corporation to part with its money. If there could be such a thing as an estoppel in pais, in a court of law, every element of such estoppel is here wanting. Peter Embury was a resisting party, and did not lead the corporation into the taking of the property. As the statute under which the proceeding was had, had no operation at all, the alleged assent is good for nothing. We have yet to learn, that a parol assent will, at law, convey a title to land. (Dezell v. Odell, 3 Hill, 215; Lyon v. Reed, 13 Mees. & Welsby, 285, 309.) As to estoppels, we refer to the American notes to Smith’s Leading Cases, in 28 Law Library, N. S. 467; and 2 Metcalf, 423, 431.
I have omitted to notice the objection to the plaintiffs title derived through the deed from Philip Embury to Margaret Jacot, executed in 1821; on the ground that it was not recorded, until after Conner received his conveyance from the corporation. As to this, it suffices to say, that the provision in the recording act, is intended for the protection of purchasers against previous grants made by their own grantor, of which they were ignorant. It has no application to a purchaser who derives his title from one claiming in hostility to all of the parties in the unrecorded deed.
There must be judgment for the plaintiffs.