Tilghman C. J.
Alexander Brackenridge, Esq. has ap» plied' to this Court for a mandamus to the Court of Common Pleas of Cumberland county, commanding the judges of the said court to proceed to an examination of the learning in the law of the said Alexander, and in case he shall be found to be of sufficient learning, to admit him as an attorney of the said court. It appears, by the record produced to us, that Mr. Brackenridge applied to the Court of Common Pleas for admission as an attorney, but the court declined proceeding to an examination of his legal abilities, because he had riot complied with the rule, which requires, as one of the qualifications for admission, that the applicant “ shall have served a “ regular clerkship within this state for the term of three “ years, with a practising attorney, or gentleman of known abilities.” The fact was, that Mr. Brackenridge had studied three years under the direction of H. H. Brackenridge, Esq. one of the judges of this Court; but the president of the Common Pleas was of opinion, that serving a clerkship •with a judge was not a compliance with the rule. We have a rule in this Court, on the same subject, and nearly in the same terms, as that of the Court of Common Pleas. Our *192 rule has the words gentlemen of the law of known abilities, which I consider as precisely of the same import as the terms gentleman of known abilities, in the rule of the Common Pleas; because no abilities, other than legal, could be of any avail, in superintlnding the education of a student of Jaw. So far then, as concerns the point before us, the rules of the two courts may be considered as the same. And I ’ confess, that if a gentleman who had studied the requisite time, under the direction of one of the presidents of the courts of Common Pleas, should apply to us for admission, I should have no hesitation in saying, that he had brought himself within the rule. The object is to prevent the admission of persons who have not gone through a regular course of study, under a gentleman capable of superintending them. That point being secured, the rule should be construed liberally. Now, who can be more proper to direct the studies of a young man designed for the profession of the law, than those persons, who from their stations must be supposed to be learned in the law ? I know, that gentlemen who have studied under judges, have been admitted in the Court of Common Pleas and in the District Court for the city and county of Philadelphia. And I have understood that they have been admitted in other courts; so that I had considered the construction of the rule as fixed. But supposing it to be so, has this Court authority to issue a mandamus to the judges of the Common Pleas ? I decline entering into the consideration of our power, founded on the principle of the Common Pleas being a court of inferior jurisdiction, because it is unnecessary. Whatever may be our authority, we cannot proceed to the exercise of it on this occasion, without violating principles more than once established, on full consideration. In the case of the Commonwealth ex rel. Nicklin and Griffith against the Officers composing the Board of Property, the rule was laid down, that where an inferior jurisdiction is vested with judicial authority, it may be commanded to proceed to judgment, but not to give judgment contrary to its own opinion. The question then will be, whether the admission of an attorney be a judicial, or only a ministerial act. On this point has been cited the case of Dexu v. the Judges of the Sweet Springs’ District Court, 3 Hen. and Munf. but it is very little to the purpose, because there the officer whom the court were called upon to admitj was not *193 appointed by them, but by a superior court. All tíiat the Sxveet Springs had to do, was to take good security. The right to the office did not emanate from them, nor was he subject to their rules or their judgment in any respect, but as to the sufficiency of his security; so that they were to exercise a ministerial, rather than a judicial function.
In the understanding of Mr. Brackenridge, the court of Cumberland county acted judicially; because he required of the president to reduce his opinion to writing, and file it, together with his reasons, according to act of assembly. What right has any individual to demand an admission as attorney at law? By the 28th section of the act for establishing courts of judicature, passed 22d May, 1722, it is enacted,, that “ there may be a competent number of persons, of an “ honest disposition and learned in the law, admitted by the “justices of the respective courts, to practice as attorneys “ there.” But who is to judge of the competent number, or of the disposition and learning of the candidates ? Certainly the judges of the respective courts. And to carry the provisions of this act into good effect, the courts have established rules for determining the honesty and the learning of the applicants. If it becomes a question, whether the rule has been complied with, the court must decide. Can this be called a ministerial act ? or rather, can any thing be more decidedly judicial? The right then, of Mr. Brackenridge, has been judicially decided ; and if he is left without remedy by appeal, he is but in the situation of many other persons, who have important interests decided in the courts of Common Pleas. For many points of great importance are decided on motion, in which neither appeal nor writ of error lies. If the court had rejected his application, without consideration, merely because it was their pleasure to do so, I will not say that they might not have been commanded to proceed to an examination of his case, according to their own rules; but it will be time enough to determine such a case when it occurs. The present is nothing like it. Mr. Brackenridge has very candidly stated every thing which took place, and it appears, from the elaborate opinion of the president, that the case was promptly and fully considered. I am therefore of opinion, that a mandamus ought not to be issued.
Yeates J.
The plain meaning of the rule of practice of *194 the courts of Common Pleas, established in 1791, for the admission of attorneys, is sufficiently obvious to my mind. The words of the rule as they respect the case before us, run thus, “ No person shall be admitted to practice as attorney, “ or counsellor at law, unless he shall have served a regular clel'kship within the state, to some attorney or gentleman “ of known abilities, for the term of three years, &c.” Here ** has been certified to the Court of Common Pleas by one of the judges of this Court, that the petitioner had served a regular clerkship within this state under him, for the term of three years, and had studied the law with assiduity within this state under him for that term, and also, that he was a person of integrity and good behaviour. And the petitioner submitted himself to be examined in the fullest manner, by three gentlemen of the law to be appointed by the court, in the presence of the president or any judge of the court.
The only doubt which has arisen, is, whether the rule is not confined to a clerkship within the state under some practising attorney. I conceive, that it is not so confined, either by the words or spirit of the rule. The disjunctive or is used in the sentence, and a clerkship with an attorney or gentleman of known abilities, equally satisfies its expressions. The channels of legal knowledge and information are equally open to assiduous study, under either character. Narrowing the rule to a clerkship under an attorney, would destroy the effect of the latter words and render them wholly superfluous. The expressions in the rule as to the point of inquiry seem taken from the rule of this Court, established in January term, 1788, with a slight verbal alteration, which cannot influence the present question, and we well know, that our construction of the ,rule has been, that a regular clerkship to some practising attorney has not been deemed essentially necessary to the admission of an attorney in this Court. Such also has been the practical construction of the rule, since it was published, in several districts of the courts of Common Pleas. Although it be admitted, that the judges of all courts must necessarily decide upon the meaning of their own regulations, it is presumed, that where the same regulations have been adopted in other courts, an uniform construction will take place, unless there be the strongest reason to the contrary. It is not insinuated, that the judge under *195 whom the clerkship wag served, was not a gentleman of known legal abilities.
My difficulties on the present application do not arise on the construction of the rule in question, but on the mode of redress required of us. To found an application for a man-damns, there ought in all cases to be a specific legal right as well as the want of a specific legal remedy. In the admission of an attorney the court act judically, not ministerially. Under the 28th sect, of the act of 22d May, 1722, (1 Sm. Laxos, 145,) the justices of the respective courts are to admit a competent number of attorneys, of an, honest disposition and learned in the lazv, to practise therein. They must therefore necessarily judge of the competent number, their integrity and legal abilities. I know of no controul we have over them in this particular. Where a ministerial act is to be done, and there is no other specific remedy, a mandamus will lie to do the act required. But where the complaint is against a person in a judicial or deliberative capacity, he maybe ordered to, do his duty according to the best of his judgment, but the court will .not direct him in what manner to decide. Griffith v. Cochran, 5 Binn. 102. 106. The case of the United States v. Lawrence, 3 Dali. 42, and also, of Respublica v. Matthezo Clark-son et al. on the application of one Freeport a bankrupt, were cited therein, to the same point. 5 Binn. 103. 107. So in England a mandamus to compel the allowance of a bankrupt’s certificate was refused, because .the Superior Court would not interfere with the discretion of the commissioners. 1 Atk. 82. Thus also, where the act of 4th April, 1809, directed the county commissioners to draw orders for the amount of school-masters’ bills, for educating poor children, if they approved thereof, this Court refused to compel them to draw an order, although they might have disapproved of the bill for bad reasons. 5 Binn. 537.
All these cases go on the ground of mandamuses, as prerogative writs, issuing of l'ight from superior to inferior tribunals. A question arises here, whether by our judiciary system, a Court of Common Pleas of a particular county is to be considered an inferior court for this purpose, and it must be admitted of great importance. In Respüblica v. The Judges of the Common Pleas of Philadelphia county, two of us expressed our doubts, whether we could award such writ to that court, but did not decide the point. 3 Binn. 275,276. *196 It now becomes necessary in my idea, to give my opinion on that question. No case can be shewn wherein the King’s Bench in England have issued such writ to the Court of Common Pleas in that kingdom, nor is it pretended that at any time such writ has been directed by this Court to any court; Common Pleas in Pennsylvania. The cases put in the English books of the awarding of writs of mandamus, are inferior courts. Mandamus will lie to restore one to an attorney’s place in an inferior court. 1 Lev. 75. 1 Sid. 152. 1 Keb. 549. Thus it was granted to the mayor of Reading for an attorney of the King’s Bench, who was prohibited to practise in an inferior court. 1 Vent. 11. 1 Sid. 410. 1 Mod. 23. So in 3 Dall. 42, U. S. v. Lawrence already cited, in the case of The People v. The Justices of the Delaware Common Pleas, cited by the petitioner’s counsel, from 1 Johns. Cas. 181, it was resolved, that a mandamus lies to a court of Common Pleas to restore an attorney, who had been rémoved from his office ; because the courts of Common Pleas in the state of New Tork were originally constituted by the style and title of inferior courts, and were in all respects considered as such; the amount of their jurisdiction was limited to 20. Besides, by a law of that state, if a Court of Common Pleas should remove an attorney from office, he could not be -admitted to practise in the Supreme Court there, although he should also be an attorney of that court. Unless- therefore the Supreme Court could revise the proceedings of such Court of Common Pleas, it would indirectly have the power of superintending and controuling the officers of the Supreme Court. The same effect could not be ascribed to the removal of an attorney from his office by any of the courts of Common Pleas of this commonwealth. In Sikes v. Ransom, 6 Johns. 279, all the reasoning of the court why a mandamus should be granted to the judges of Common Pleas, commanding them to seal a bill of exceptions, is founded on the circumstance of the Common Pleas being an inferior jurisdiction.
The powers of the judges of the Supreme Court of this state are certainly very large and ample, under the 13th sec. of the act of 22d May, 1722. So also of the justices of the Courts of Common Pleas, under the 21st sect, of the same act. “ They shall hold pleas of assizes, scire facias, reple " vins, and hear and determine all manner of pleas, actions, *197 '« suits, aná causes, civil, personal, real and mixed.” Except in points of local extent I see no limits prescribed to their jurisdiction in civil cases. The 5th sec. of the 5.th article of the Constitution has provided, that by virtue of their offices, they shall be justices of Oyer and Terminer and General Gaol Delivery for the trial of capital and other offenders in each county, and the 6th sec. confirms the exercise of their usual powers, as well as those of this court. The office judges who have jurisdiction in cases of life and death, cannot be called a trust of an inferior nature. It by no means follows, that because as the Supreme Court, we can issue writs of error to the Courts of Common Pleas to review their decisions, that they are to be considered as inferior courts in a legal sense, subject to our superintendance and controul by writs of mandamus, nor can I bring myself to believe, that such authority, was ever meant to be conferred on us. The case of Dew v. The Judges of the Sweet Springs District Court (3 Hen. & Mumf. 1.) had been cited since the argument. It appears hereby, that two judges against one in the Supreme Court of Appeals in Virginia, reversed the judgment of the General Court, and held that a writ of mandamus was the proper remedy to restore a clerk of the District Court, ousted from his office by the illegal appointment of another person. The admission of a clerk of court duly commissioned, is an act purely ministerial and not judicial. To render this case in the least applicable to that before us, the judiciary sj'stem of Virginia ought to be shewn, and that the powers of that District Court were equal to those of the Courts of Common Pleas of this state. It seems to me to have been assumed on that argument that the judges of the Sweet Springs District were an inferior jurisdiction, and instances were produced both before and since the American revolution, of writs of mandamus having been awarded by the General Court to such judges. Whether under our judiciary system our several Courts of Common Pleas are to be considered as inferior courts, to. whom such high prerogative writs may legally issue, is the very point I have attempted to consider. But in the case of Dew, the great question was, whether the District Court was authorised to appoint another clerk in case the clerk appointed by the judges of the General Court should either neglect or be unable to give security as the law required on the first day of the term. It appears *198 from the same report (p. 38.) that there is a Virginia law of 1799 regulating the proceedings in the cases of mandamus. (Revised Code, vol. 1.p. 392.) And we have no such statute in our code j that the allotment of judges to the several District Courts, as made by the judges of the Geherál Court, are 1'eco!'hed in the District Courts ; and that the General Court has also the power of granting writs of supersedeas to the u<%ments of the County Courts. These it cannot be denied are prominent features of inferiority which do not hold amongst us. A contest on the ground of jurisdiction would be highly unpleasant.
It has been said, that for every wrong the law has provided a remedy, and that right and redress are correlative terms. This is true, as a general proposition, but cases often happen wherein its uniform correctness on principles of abstract justice may fairly be doubted. An instance is given by Marshall Chief Justice, in 4 Hall’s Law Jour. 87. The most gross trespass done to a freehold can only be sued for in the county wherein the lands lie, and where the trespasser may never be found. The process of the court must be executed in order to give' it a right to try the cause, and the trespasser by keeping out of the county, is wholly dispunishable, unless the offence be attended with such circumstances as render it indictable. Thus in Shortz v. Quigley (1 Binn. 222.) it was held that a bill of exceptions does not lie to the opinion of the court in receiving or rejecting testimony, on a motion for summary relief. Although the hardest cases may occur under such interlocutory decisions, and palpable injustice may ensue therefrom, yet courts of error are not at liberty to review the same. The law confides the exclusive order and direction in such cases to the legal discretion and judgment of the court having jurisdiction over the subject matter. And thus also, in Burd v. Dansdale’s lessee, 2 Binn. 91, it was adjudged, that this court cannot take cognisance of a refusal in the Court of Common Pleas to grant a new trial. The Chief Justice there asserts that it was decided by thHigh Court of Errors and Appeals, at their last session, that a writ of error did not lie on the decision of the Supreme Court on a motion, unconnected with the trial of a cause. We can be at no loss to conceive many cases, wherein gross injustice may possibly be done to suitors, and yet they may be wholly remediless in any Court of Error and Appeal. *199 And we, moreover, must keep in mind, that the existence of a right is always questionable, when the wisdom of the law affords no adequate remedy on its violation.
Upon both grounds which I have mentioned, I am constrained to deny the mandamus which has been applied for, although I am clear in my opinion on the construction of the rule.
Brackenridge J. delivered no opinion.
Judgment affirmed.
*201 CASES IN THE SUPREME COURT 03? PENNSYLVANIA. Eastern District, DECEMBER TERM, 1814.