Gws 38 }
40SC 129

# Drexel *against* Man.

The Supreme Court has no power to issue a mandamus to the District Court for the city and county of Philadelphia to compel them to sign a bill of exceptions.

It *seems*, the District Court may by rule of court require a party taking a bill of exceptions to specify on the trial the matters of law contained in the charge to which he excepts, and that no general exception to the charge will be allowed but only those distinctly stated.

UPON the petition and affidavit of the plaintiff in error, this court granted a rule upon Judge Stroud, of the District Court for the city and county of Philadelphia, to show cause why a *mandamus* should not issue to him, commanding him to sign the bill of exceptions tendered to him by the counsel for the plaintiff in error, containing a general exception to the whole of the charge of said Judge, and the charge itself *in extenso.* On the return of the rule, the learned Judge put in the following answer :

This respondent, by protestation, not owning or allowing any of the matters of the petition to be true, as they are therein alleged, but waiving, so far as it is in his power so to do, all and every objection to the jurisdiction of your Honours in respect to the prayer of the petition, shows and offers to the consideration of your Honours,

That the District Court for the city and county of Philadelphia is a court of special jurisdiction, constituted by an Act of the General Assembly of this Commonwealth, passed the 28th March 1835, entitled, "An Act to establish the District Court for the city and county of Philadelphia," whose powers, authorities and proceedings are to be ascertained and regulated by the true intent and meaning of the said Act of Assembly and the several supplements thereto, and by such other general laws only as are necessarily to be implied as binding upon the Judges thereof in common with the suitors and parties and their attorneys, in proceedings lawfully instituted in said court.

That the statute of Westminster 2, chap. 31, is the only authority whereby a bill of exceptions is matter of right to be required by any person impleaded before the Judges of the said District Court, and that by the true intent and meaning of said statute, the pretended bill of exceptions, mentioned in the petition, ought not to have been allowed by the respondent, but on the contrary, it was and is his duty to refuse to seal the same.

That the statute of Westminster 2, before, and at the time of the settlement of this country by colonists under the charter

granted to William Penn, had received a judicial construction, that a bill of exceptions should be taken and allowed only upon some point of law either in admitting or denying evidence, or a challenge, or some matter of law arising upon facts not denied or sufficiently proved, in which either party had been overruled by the court. This proposition was asserted in the argument of *Bridgeman* v. *Holt*, (*Show. Parl. Cas.* 120), A. D. 1693, as familiar learning in that day, and Sir William BLACKSTONE, (3 *Com.* 372), and Sir Francis BULLER, (*Nisi Prius* 310), severally make the same statement on this subject.

The Supreme Court of the United States, in *Ex parte Crane*, (5 *Peters* 190), a case presenting no other matter for adjudication, denied the right of a party to a general exception to the charge of the Judge presiding at the trial, and required a distinct specification of the point or points of law, in the ruling of which the Judge was supposed to have erred. And to impart to this judgment the highest efficacy, the same court shortly afterwards adopted the following rule of court: " That hereafter the Judges of the Circuit and District Courts do not allow any bill of exceptions which shall contain the charge of the court at large to the jury in trials at common law upon any general exception to the whole of such charge; but that the party excepting be required to state distinctly the several matters of law in such charge to which he excepts, and that such matters of law, and those only, be inserted in the bill of exceptions and allowed by the court."

Our sister States have given the highest sanction to the utility and necessity of this doctrine. In at least sixteen of these, express legislation exists, requiring in clear and positive terms, that in bills of exceptions, a specification shall be made of the points of law, in the decision of which the inferior tribunals are alleged to have erred;—thus, at once, embodying the substance of the British statute, and adopting the exposition which the courts of that kingdom had placed upon it. In the remaining States, it is confidently believed that no decision can be adduced, contravening in the slightest degree the received construction of the statute of Westminster, or any intimation of a practice at variance with its requirements. In Connecticut the statute appears to be yet in force, and the same judicial construction has been given to it which it had received before the colonization of the State. *Wadsworth* v. *Sanford*, (*Kirby* 456, A. D. 1788); *Watson* v. *Watson*, (10 *Connec.* 75); *Picket* v. *Allen*, (*Ibid.* 146). In the Supreme Court and in the High Court of Errors and Appeals of New York, the same doctrine is maintained, as may be seen in the opinions of Chancellor KENT in *Van Gorden* v. *Jackson*, (5 *Johns.* 467), and in *Frier* v. *Jackson*, (8 *Johns.* 387), and of Mr Justice WOODWORTH in *Jackson* v. *Cadwell*, (1 *Cowen* 639), and of Chancellor WALWORTH in *Law* v. *Merrills*, (6 *Wend.* 274). To the same effect is the decision of the Supreme Court of New Jersey in *Coxe* v. *Field*, (1 *Green* 216),

on the statute of that State, which, with a slight verbal addition, is a transcript of the statute of Westminster. And, in short, wherever trial by jury and Courts of Error have a place in the same system of jurisprudence, and the forms of the common law are observed, and a bill of exceptions is the prescribed mode of bringing under revision the proceedings of the inferior tribunal, a specification of the alleged errors in such tribunal has been, it is believed, always deemed an essential requirement at the hands of the complaining party.

The respondent submits to the consideration of your Honours, that to the generality of this remark the decisions of our own courts furnish no exception, although it is freely admitted that, in regard to bills of exceptions, as well as in many other matters, a very loose practice has, to a great extent, obtained, as for example, in *Thomas* v. *Wright*, (9 *Serg. & Rawle* 90), where, it appears, the notes of the evidence of four counsel in the cause, together with the notes of the Judge, were referred to in the bill of exceptions instead of an insertion of the appropriate evidence, or a statement of facts settled by the counsel or court. And our reports furnish traces of very extraordinary pretensions on the part of counsel in regard to the proceedings of inferior courts, in connection with the revising superintendence of this honourable court. Thus, in one case, *Stewart* v. *Huntingdon Bank*, (11 *Serg. & Rawle* 267), it was made the subject of a bill of exceptions, that the Judge refused to suspend the trial of the cause, until the bill of exceptions was drawn up in form and sealed by one of the Judges; and in *Munderback* v. *Lutz*, (14 *Serg. & Rawle* 125), the court was moved for a rule to show cause why a *mandamus* should not issue, commanding the Judge who had presided on the trial below, to furnish his notes of the evidence, for the purpose of having them transcribed for the use of counsel in reference to the bill of exceptions, or its substitute, under the Act of 24th February 1806. But no case has yet arisen which required of the revising courts any action or decision directly on this question. On two occasions, at least, we have the opinion of Mr Justice DUNCAN, concurring in the fullest manner with the construction of the statute of Westminster, already so frequently adverted to; the one in *Thomas* v. *Wright*, (9 *Serg. & Rawle* 91); the other in *Stafford* v. *Walker*, (12 *Ibid.* 196). And in *Reigart* v. *Ellmaker*, (14 *Ibid.* 124), this honourable court, consisting then, as now, of five Judges, pronounced, through the late chief justice, an opinion in respect to the construction of the Act of Assembly of the 24th of February 1806, which, it is confidently submitted to your Honours, is equivalent to a full recognition of the principle which the respondent has asserted in refusing to allow the pretended bill of exceptions, alleged by the petition to have been exhibited and required of him to be allowed. It is there decided, that the true meaning of the Act of Assembly mentioned, was, that when a Judge delivered an opinion on mat-

[Drexel v. Man.]

ter of law, he should, if requested, reduce his opinion, with his reasons for it, to writing, and file it of record. This, it is said, in that instance, " was done, as to several specified points, on which an opinion was requested by the defendant's counsel. But this, it seems, was not deemed sufficient. The Judge was requested to reduce his whole charge to the jury to writing, and file it. There is nothing in the Act of Assembly which authorizes such a request, and the Judge was very right in declining to comply with it." And the reasons which are there assigned by the court, demonstrate, in the most convincing manner, the impropriety of such a requisition, whether under the Act of Assembly which requires the opinion of the Judge to be filed of record, or upon the statute of Westminster, where the matter complained of is to be exhibited through the medium of a bill of exceptions. " In a charge to the jury," says the chief justice, " the Judge sums up the evidence and lays it before them, with such observations of his own as he thinks pertinent. I believe no Judge reduces his whole charge to writing before it is given, and, indeed, he could not do it without ruinous delay. And after it is given, it would be impossible for a man of the most tenacious memory to recollect all that he has said on the facts of the cause. And even if it were possible, it would be improper to burthen the record with a quantity of unnecessary matter. It is the business of the counsel who requests an opinion to be filed, to specify it. Several opinions on matter of law may be delivered in one charge. Some of these may be objected to, and some not; but at all events, the Judge should be informed what the opinion is, which he is desired to reduce to writing, &c., and then it is his duty to file that opinion, with his reasons, and no more."

It has never been supposed, so far as is known to the respondent, that the Act of 24th February 1806, imposed restrictions upon a party dissatisfied with the charge of a Judge, which were not applicable to a party under similar circumstances seeking redress through the medium of a bill of exceptions. And relying upon this view of the subject, the respondent would have deemed it altogether superfluous to have done anything else by way of answer to the petition exhibited to your Honours, except to recall the decision in *Reigart* v. *Ellmaker* to your Honours' recollection. But he finds in the fact that your Honours have granted the rule to show cause in this case upon the bald allegation in the petition, that a general exception to the whole charge to the jury in the case of Man v. Drexel was refused, reason to suspect that he has mistaken the import of the decision in *Reigart* v. *Ellmaker*, or over-estimated its value, or imagined an analogy, in the purpose of the Act of 24th February 1806, and in that of a bill of exceptions, which does not exist.

The respondent, therefore, feels bound to show to your Honours, that long before the trial of Man v. Drexel, the District Court for

the city and county of Philadelphia adopted and promulgated the following rule of court, that is to say : " Either party excepting to the charge of the court to the jury, shall, before the rendition of the verdict, state distinctly the several matters of law in such charge to which he excepts ; and no general exception to the whole of the charge shall be allowed by the court, but the exceptions to the matters of law so distinctly stated, and those only shall be allowed in the bill of exceptions ;" and that this rule was in force at the time of the said trial.

And the respondent shows to your Honours, that when, after the charge to the jury in Man *v.* Drexel had been delivered, the counsel for the said Drexel stated to the respondent, that he excepted to the said charge, the respondent reminded him of the existence of the said rule of court, and informed him that a general exception to the whole charge could not, in consistency with the rule, be taken or allowed, but that it was incumbent on him to specify such part of the instructions to the jury as he supposed to be erroneous in point of law, and that his exception must be restricted to such specification. That thereupon he immediately specified two points upon which he desired to except. That the respondent replied, that as to one of these points, it was rightly taken, for it had been ruled as he had stated, and its effect was likely to be adverse to his client, and that this was the only point, it was believed, which had been ruled against the defendant. That in regard to the other point mentioned, he might, if he chose, except to this also ; yet it had not been ruled against, but in favour of his client, and that the opposite party had already actually, on that account, taken exception to the ruling on this point, and that it had been allowed. That the said counsel then said he would except to the one point only, and a note thereof was immediately made by the respondent, and it was allowed. The respondent heard nothing more on the subject until near the expiration of the ten days limited by another rule of said court, within which the bill of exceptions was required to be prepared and exhibited to the court. That the respondent apprehending no difficulty in regard to the charge, handed or sent, as is his usual practice, the bill to the opposite counsel, in order that the statement of the evidence might be settled between the counsel. That after a considerable time the bill was returned to the respondent, and he then discovered that an extended statement, purporting to be the entire charge delivered to the jury, had been inserted in the bill, and that an exception had been prepared to the whole charge, without any specification according to the rule of court and the actual transaction on the trial. The bill in this form, the respondent refused to seal, but he copied out with his own hand the point of law which had been excepted to by the defendant's counsel on the trial : and when some time afterwards he saw one of the counsel for the plaintiff, he handed him the bill, [respondent having cor-

[Drexel v. Man.]

rected the evidence by his notes of the same taken on the trial] that a final comparison might be made by the counsel, and the bill be re-presented to the respondent in proper form for the sealing thereof by him.  It was not until after the lapse of another period of considerable duration that he was informed by the defendant's counsel that he considered himself entitled of right to a bill of exceptions, containing what he deemed to be the entire charge to the jury, with a general exception thereto.  The respondent refused to allow such a bill, but apprised the counsel that a bill containing the exception as noted at the trial, and which had been written out for the purpose, he was ready to seal at any time when it might be offered to him, and he is now ready and offers to allow and seal the same.

The respondent thinks proper further to state, that that which was prepared by the defendant's counsel as the charge of respondent to the jury, did not correspond with, but was materially different from, the charge which respondent did deliver.  That on this point the respondent cannot be mistaken, for although he did not on that occasion, nor has ever at any time, in relation to any trial, reduced to writing the whole matter of his charge, yet from the notes made by him as preparation for such charge, he has no difficulty, aided by his memory, in ascertaining the correctness or inaccuracy of any charge which may be imputed to him.

And the respondent shows and offers to the consideration of your Honours, that inasmuch as a Court of Error concerns itself with alleged errors in matter of law in the proceedings of inferior tribunals, and not with the general merits of the controversy between the parties as disclosed by the evidence, the rule of court which requires a specification, on the trial, of the matters of law contained in the charge, to which a party excepts, grants to such party every advantage which is called for by a regard for the interest of such party; and that the only difference between the requirement of such a rule and the allowance of a general exception to the charge has reference to the supposed convenience of the excepting party, and nothing more.  For the rule of court adverted to allows any and every matter of law alleged to have been erroneously stated to the jury to be excepted to; and by a rule of your honourable court, the plaintiff in error is required to make a written specification of the particular errors which he assigns, and on which he intends to rely; so that the only difference is whether the party shall make his specification at one time or another.

And the respondent shows and offers to your Honours' consideration,—that in respect to the convenience of counsel as to the point of time at which the exceptions are to be taken, this depends altogether upon the competency of counsel to discharge aright and generally the duty which appertains to the office of an advocate, which he has assumed, and especially upon his fitness

[Drexel v. Man.]

and ability to fulfil the trust confided to him in the support or defence of the particular cause which he has undertaken to conduct. That to counsel gifted with the appropriate endowments of mind, and furnished with the requisite legal erudition, the knowledge which, if not possessed before, must be acquired during the trial, of the facts of the cause and the questions of law which thence arise, will enable him to specify, on the conclusion of the charge, the supposed or suspected errors therein more readily than at any future period.

And the respondent would further offer to your Honours' considerations,—that of necessity, from the constitution of a Court of Error, it is imposed upon such court, not unfrequently, to reverse judgments from very small faults in the charge, such as arise from the use of ambiguous language or the statement of a proposition or principle of law too broadly, and the like; whilst, at the same time, it is quite obvious that such minute error has very slight or no bearing at all on the merits of the cause, and in all probability has had no operation in producing the verdict. Faults of this description, when brought to the notice of a court on a motion for a new trial, are usually disregarded. *Wakely* v. *Hart*, (6 *Binn.* 316), is an example of this kind. Being on a motion for a new trial, the error in the charge was deemed unimportant; on a writ of error the judgment must have been reversed. Had the subject of objection been mentioned to the judge before the rendition of the verdict, its force would have been apparent and the mistake corrected, and yet the result of the trial not affected by it. The specification required by the rule of court is calculated to produce and has produced the like beneficial effect. The supposed error, on being pointed out, is at once rectified—the jury properly instructed—unequivocal language substituted for what possibly might mislead—a judicious verdict rendered, and a writ of error saved.

The respondent, confiding in the justness and force of the suggestions already made, in conclusion, nevertheless, shows and offers to the consideration of your Honours, that the allowing of a general exception to the charge or the requiring of a specification of the errors alleged, is a matter which concerns the practice of the inferior court, and therefore, upon settled principles well known to your Honours, cannot be the subject of revision at all by a Court of Error. Upon this, as well as upon the other considerations submitted to your Honours, the respondent prays that the rule upon him, founded on the petition of Francis M. Drexel, and granted by your Honours, to show cause why a peremptory mandamus should not issue, commanding the respondent to sign the bill of exceptions tendered to him in the case of Man *v.* Drexel by the counsel of said Drexel, with the general exception therein set forth, be discharged.

[Drexel .v. Man.]

*Jack*, for the rule.

1. The power of this court under the constitution, as a Court of Errors, necessarily embraces the right to issue this writ to any court to which a writ of error lies. "The judicial power of this commonwealth shall be vested in a Supreme Court," &c.; *Str. Purd.* 32, (*Ed.* 1841). It is the clear intention of this section of the constitution to establish, by the use of the term "Supreme," the authority of this court over all others; and if any doubt was entertained on this point, it must be removed by the clause in the 4th section of the same article, which says "The jurisdiction of the Supreme Court shall extend over the State." Being then a court of errors and appeals, with the same revisory powers as the Court of King's Bench in England, and forming the last resort of the suitor for a review of alleged legal errors in the courts below, and the powers of this court being fixed and not contingent, it follows that they must have the power to enforce the inferior judicatories to transmit their proceedings to them for review. As the acts of the judge in trying the cause do not appear on the record, a bill of exception to his conduct in the cause, in receiving or rejecting testimony, narrs., pleas, &c., and containing his instructions to the jury, forms the medium through which the court are to judge whether his functions have been discharged according to law, without legal prejudice to the just rights of the parties. By the statute of Westm. 2, (*App.* 1 *Chit. Stat.* 817), the bill of exceptions is given to the party. It is not restrained by the statute to any particular part of the judge's conduct in the cause. The words of the statute are: "doth allege an exception." It is therefore the clear right of the party to make his exceptions as he thinks proper. It is for this court to say whether they be good or bad in law. If therefore a bill of exceptions be made and tendered to the judge and he refuses to sign them, if this court cannot compel him to perform this official duty, the jurisdiction of this court as a court of errors is gone. It could never have been the intention of the constitution to have conferred so impotent an authority.

But we are not without precedent for this rule. In *Ex parte Crane*, (5 *Peters* 192), which was an application for a similar rule, Chief Justice MARSHALL decides this very point. He says, "A doubt has been suggested respecting the power of the court to issue this writ. We have determined that the power exists. In England the writ of mandamus is defined to be a command issuing in the king's name from the Court of King's Bench, and directed to any person, corporation or inferior court of judicature within the king's dominions, requiring them to do some particular thing therein specified which appertains to their office and duty; and *Blackstone* (3 *Comm.*) says: 'It is the peculiar business of the Court of King's Bench to superintend all inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial

VI. — 50

[Drexel v. Man.]

powers, with which the crown or legislature have invested them: and this not only by restraining their excesses, but also by quickening their negligence, and obviating their denial of justice.' It is, we think, apparent that this definition and this description of the purpose to which a mandamus is applicable by the Court of King's Bench, as supervising the conduct of all inferior tribunals, extends to the case of a refusal by an inferior court to sign a bill of exceptions;" and the Judge continues, "That a mandamus to sign a bill of exceptions is warranted by the 'principles and usages of law,' is, we think, satisfactorily proved by the fact, that it is given in England by the statute of Westminster 2, and is so, in fact, termed in the books." See also to the same point, 2 *Johns. Cas.* 118; 6 *Johns.* 279; 1 *Caines* 511; 2 *Ibid.* 97; the New York statute being an exact transcript of the statute of Westm. 2. Chief Justice (afterwards Chancellor) KENT, in delivering the opinion of the court, said, (all these being similar applications), "We have the general superintendence of all the inferior courts, and are bound to enforce obedience to the statutes, and to oblige the subordinate courts and magistrates to do those legal acts which it is their duty to do. There is no reason why the awarding of this particular writ does not fall within the jurisdiction of this court." To the same point may be cited 1 *Serg. & Rawle* 195; *Lawlor* v. *Murray,* (1 *Sch. & Lef.* 75); *Rex* v. *Barker,* (3 *Burr.* 1265). The learned Judge, however, in his answer, very properly yields the question of jurisdiction. The point has been made, but never decided in our own courts.

2. What is the character of the writ awarded in the register by the Chancellor in such a case? In *Ex parte Crane,* before referred to, Judge BALDWIN says, speaking of the writ founded on the statute of Westminster 2, "It is a sort of mandatory writ;" again, "and in granting the writ, the Court of Chancery act as much judicially as the Court of King's Bench does in granting a mandamus." In *Sikes* v. *Ransom,* (6 *Johns.* 280), Chief Justice KENT says; "It is in effect a writ of mandamus; and so it is termed in the books (*Bac. Ab., title "Mandamus," E,*); and in *Lawlor* v. *Murray,* (1 *Sch. & Lef.* 78), the Lord Chancellor, speaking of this writ, says, "It is a writ founded on the right of the crown to compel its officers to pay obedience to the statute; it is therefore a sort of prerogative writ." And at page 79 he says, "It is called a mandatory writ, as it unquestionably is." All these authorities show that a mandamus from this court and the writ from the register are substantially the same, and the rights of the parties are identical; for a false return to the Chancellor's writ an action lies; for a false return to a mandamus here an action lies.

3. The injured party can have no remedy against a judge who refuses to sign a bill of exception until a return is made to this writ. It is indispensable then to the maintenance of the party's rights. The bill of exceptions being given by the statute of West-

[Drexel v. Man.]

minster, and this writ being given to compel performance, no action lies until the return of the writ, and only lies for a false return.

4. As to the cases cited by the learned Judge, *Ex parte Crane* sustains his position only in part. Judge Johnson went with the majority of the court, but declared "that he thought the whole charge ought to come up." The motion was refused on other grounds. The case in *Kirby* goes entirely on the ground that the bill was tendered too late, being after verdict. *Watson* v. *Watson* decides that the bill is defective, because it brings up no points—nothing distinctly for review ; and *Picket* v. *Allen* decides that the point not having been made below, cannot be made in the court above. That is in the teeth of all our decisions. *Van Gorden* v. *Jackson* decides that a bill of exceptions to a Judge's charge does not lie, and is opposed to all our decisions. *Frier* v. *Jackson* goes on the same ground. In both these cases the majority of the court decided against this position. *Jackson* v. *Cadwell* is the same case. In *Law* v. *Merrills* it was held not competent to assign errors, because no exceptions were taken to the charge. *Coxe* v. *Field* was decided on the State statute.

5. The right of counsel to the general exception and the whole charge. The point was distinctly made in *Burr* v. *Sim*, (4 *Whart.* 150), and counsel did not dream of defending the refusal of the court below upon this part of the case; they offered no argument to sustain it, and Judge Kennedy informed the counsel of the plaintiff in error that they need not contend the point. It was well understood at the bar that this right to a general exception was sustained by this case. In fact the practice of this court always has been to allow the assignment of errors, whether made below or not. Thus in 2 *Binn.* 323, Chief Justice Tilghman says, " It is open to the plaintiff in error to assign error in an opinion on any matter material to the issue appearing in the bill of exceptions, although not particularized in stating the exceptions :" and in 10 *Serg. & Rawle* 62, " The court always reserves to itself the right to correct an error which stares them in the face, when they think the justice of the case requires it." And in 5 *Watts* 205, " If it appears by the record that the plaintiff has no cause of action, this court will reverse a judgment although the point was not made in the court below." These authorities are all inoperative so far as the bill of exceptions goes, if the party is deprived of the general exception bringing up the whole charge. Again, how is the point taken to be made intelligible if standing alone? Nothing is more capable of an ungenerous interpretation and unfairness towards the judge; the justice of the case requires the whole charge; the exceptions are then fairly stated and examined. Then, as to the rule of the District Court requiring counsel to specify the particular exceptions made, and against allowing a bill of exceptions containing the whole charge :—

6. It is contended that the District Court have no authority to

[Drexel v. Man.]

establish any such rule; and it is unconstitutional, because it is in direct conflict with the rules of this court, which require the errors to be assigned here. This rule calls on the party in effect to assign the errors in the court below. That is usurping the jurisdiction of this court. In *Barry* v. *Randolph*, (3 *Binn*. 278), Chief Justice TILGHMAN says, " Every court has a right to make rules for the transaction of its business, provided such rules are not contradictory to the law of the land; and Judge YEATES says, " No rule can be made which would divest a citizen of any legal right;" and in *Boas* v. *Nagle*, (3 *Serg. & Rawle* 253), this court said, " A rule cannot be established in contravention of any Act of Assembly." And in *Rush* v. *Turner*, (4 *Yeates* 362), " No rule can abridge the rights of individuals secured by positive laws." Also in 11 *Serg. & Rawle.*131, this court decided that a rule of court which was a Statute of Limitation was void. All these authorities show conclusively that any rule of the inferior court which restricts the court above from a complete review of their proceedings, whether apparent on the record or on the bill of exceptions, is an unconstitutional rule, against law, and therefore void. It must be obvious to every practitioner that a charge on the whole law and facts, when taken together, may present a clear error in law, yet divided and subtracted into parts, may not exhibit the same result.

7. This rule of the District Court is of no practicable utility to the practice of that court; it is no advantage to the judge or the counsel on the opposite side. After the judge has charged, it is not to be expected that he will change his opinion in the face of the jury. It is of no importance to the opposite counsel, as the counsel complying with the rule cannot be held to those exceptions in the court above—they can assign other errors.*

---

* *Statute of Westminster* 2d, 1 *Chitty's Statutes.* " When one that is impleaded before any of the Justices doth allege an exception, praying that the Justices will allow it, which, if they will not allow, if he that alleged the exception do write the same exception, and require that the Justices will put to their seals for a witness, the Justices shall so do; and if one will not, another of the company shall. And if the King, upon complaint made of the Justices, cause the record to come before him, and the same exception be not found in the roll, and the plaintiff show the exception written, with the seal of a Justice put to, *the Justice shall be commanded that he appears at a certain day*, either to confess or deny his seal. And if the Justice cannot deny his seal, they shall proceed to judgment according to the same exception, as it ought to be allowed or disallowed."

*Translation of the Writ in the Register.*

The King, To————, Greeting :

Whereas in the Statute of Westminister the 2d, among other things it is contained, that in any suit before our Justices, where an exception is taken, and the party prays the Court to allow the same, if he refuse to allow the same, and the party making the exception puts his exception in writing, and requires the Justice to put his seal in testimony of the same, if he should refuse so to put his seal, some one of the assembly may place it, according to the full meaning and words of the statute ; and now we having received a grievous complaint of one W, that

[Drexel v. Man.]

The opinion of the Court was delivered by

GIBSON, C. J.—It is strange that the writ of mandamus should still be supposed to give remedy in a case like the present. It is true that it does so in New York, as appears by *The People* v. *The Judges of Washington County*, (2 *Caines' R.* 97), the secret of which is, that the matter is regulated there by a particular statute of the state. I have seen no case, English or American, which indicates that it may be used for the purpose as a prerogative writ. In England it certainly may not; for we are told by Lord COKE, (2 *Inst.* 426), that the proper remedy is a writ specially framed on the stat. Westm. 2; and accordingly we find a form for it in the Register, page 182, setting forth the circumstances of the case, and commanding the judges, if they be true, to affix their seals to the bill. If they return that they are untrue, the superior court proceeds no further, but leaves the complainant to his action for a false return, in which their truth is tried according to the course of the common law. Such a remedy certainly resembles an alternative mandamus; still it is not a prerogative writ, but specific, grounded on a statute. That no instance of its use is to be found, was said by counsel in *Bridgman* v. *Holt*, (*Show. P. C.* 122), to be because no English judge had ever refused to allow a proper exception. However that may be, recourse might certainly be had to it there, and a writ might be framed in conformity to it here. But if we have no precedent for an actual recourse to it, neither have we a precedent for a successful recourse to a mandamus as a substitute for it. In place of that, it was very seriously doubted in *The Commonwealth* v. *The Judges of the Common Pleas*, (3 *Binn.* 273) ; *The Same* v. *The Same*, (1 *Serg. & Rawle* 187) ; *Morris* v. *Buckley*, (8 *Serg. & Rawle* 211) ; and in *Kolb's Case*, (4 *Watts* 154), whether a mandamus lies to a county court for any purpose whatever. The point has not been decided, nor is it necessary to decide it now ; for it has never been sup-

---

lately, in a certain amicable suit in our Court in London, before you, according to the custom of said city, between T and the aforesaid W, that the said W render to the said T his reasonable purport or share of moneys of the said T, from such time as he was receiver of the same; various exceptions were taken and alleged, and those exceptions have been put into writing, for that you refuse to allow the same, and have been repeatedly required and prayed to affix your seal to those exceptions, according to the form of the aforesaid statute. Yet so it is, that you have objected and still do object, and refuse to affix your seal to the aforesaid exceptions, to the grievous injury and manifest prejudice of the said W. Wherefore he has prayed us to provide a remedy for him. And because we are desirous that the aforesaid statute be strictly observed, and that justice be done to the said W in the premises, We command you, that if so it be, that you affix your seal to the aforesaid exceptions, thus had before you in the aforesaid suit, by the aforesaid W, in writing, as is the custom, according the form of the statute aforesaid; and hereof fail not, under the penalty in such cases impending. T, &c.

C. B.

[Extract from " The Registarium Ovium Brevium, of 1595.]

[Drexel v. Man.]

posed that it lies to compel performance of a judicial function in a particular way.   Thus it was held in the first of the cases just quoted, that it lies not to compel the reception of an appeal; or in the second, the admission of an attorney to the bar.   So far was the principle carried in *Griffith* v. *Cochran*, (5 *Binn*. 87), that it was applied to the function of an executive officer acting in a deliberative capacity.   Is not the sealing of a bill of exceptions a deliberative act?   The exception is written by the party who alleges it, and the fact is judged of by him who, of all others, is most competent to determine whether it is truly written, because his eyes and ears have taken in the whole transaction.   And yet counsel come here for the interference of a court which knows nothing of the matter but what it gleans from affidavits, to compel him to act in a particular way, though at his peril, on an assumption of facts and circumstances which he may know to be unfounded.   But that is not all.   We have used the mandamus only as a process in the last resort: never where there was a specific remedy.   Thus it was refused in *The Commonwealth* v. *Rosseter*, (2 *Binn*. 362), where the object was to restore the relator to a pew in an incorporated church, because he had a remedy by action for a disturbance; and in *The Commonwealth* v. *The Canal Commissioners*, (2 *P. R.* 518), it was said that though the writ is grantable of common right, yet it is only where it is necessary to prevent a failure of justice.   The principle is more emphatically asserted by Lord HARDWICKE, in *The King* v. *Wheeler*, (*Cases Temp. Hardw.* 99), in saying, " the reason why we grant these writs is to prevent a failure of justice, and for the execution of the common law or of some statute, or of the King's charter, *and never as a private remedy to the party*, except on the statute of Anne, and that stands on another footing : nay, the old cases went so far as to refuse a mandamus in all cases where an assize lay ; and though the court is not so strict now-a-days, yet it shows in what light these writs are considered."   Now the writ grounded on the statute of Westm. 2, would be much more manageable than an assize.   Again, in *The Commonwealth* v. *The Commissioners of Philadelphia County*, (5 *Rawle* 75), the court would not award a mandamus to settle the validity of an election, but put the parties to a *quo warranto* in order to try the contested facts by a jury. As, then, there is a specific remedy for the case before us, by the form of writ in the Register, the rule might be discharged for that reason alone.   But we are bound to take the facts returned to be incontrovertible, and the judge has returned what would prevent us from awarding this extraordinary writ were we otherwise competent in such a case to do so.

**Rule discharged.**