## COMMONWEALTH ex rel. *v.* HULTZ.

The Supreme Court will not compel an amendment of the record of an inferior court. The remedy is by motion in that court: it being a matter of judicial discretion for the court having the custody of the record.

In error from the Common Pleas of Allegheny county.

In an ejectment, pending in 1817 in the Common Pleas, against Wilkins, the defendant dying, Eliza Wilkins by her guardian was substituted. The entry was made on the trial list by the judge, but not transferred to the docket. Judgment having been entered for plaintiff, execution for costs issued, and the property of the substituted defendant was sold. On ejectment by her, in 1845, this defect was discovered, when the court was moved to make the entry *nunc pro tunc*, which was refused.

A rule for a mandamus was then applied for, on the suggestion of these facts, and proof of the handwriting of the judge who made the entry on the trial list, which was refused, and this writ of error sued out.

*Craft*, for plaintiff in error.—The act is ministerial and the subject of a mandamus; 1 Serg. & Rawle, 187. The refusal to award the writ was judicial, and hence the subject of a writ of error under the act of 1836, §§ 18, 20. The evidence was perfect and the right to the amendment without doubt, hence we are within the rule laid down in the cases: 1 Term Rep. 404; 3 Id. 652; Selw. N. P. 1072; 1 Wend. 318; 1 Chit. Eccl. Prac. 390; Cowp. 377; 3 Burr. 1647; 2 Hen. & Munf. 132; 3 Ad. & Ell. 416; 1 Wils. 206; 11 Ad. & Ell. 512; 5 Binn. 81; 5 Pick. 123; 10 Wend. 85. That there is no precedent cannot prevent the exercise of the right; 2 Barn. & Cres. 584; 8 Eq. 219; Act 1836, § 3.

*Shaler*, contra, cited 1 Yeates, 155; 6 Binn. 5, 456; 16 Serg. & Rawle, 17; 6 Wheat. 476; 1 Watts & Serg. 460; 5 Id. 274; 6 Id. 386.

2 R

*Sept.* 24.    BELL, J.—It is now so firmly settled by repeated and unvarying decisions, that although the Supreme Court may, by the writ of *mandamus*, order an inferior judicial officer to proceed to judgment, it had no power to compel him to decide according to the dictate of any judgment than his own ; that it almost savors of affectation to cite particular cases in proof of the rule.    Avoiding the cumbersome task of even referring to the numerous authorities which might be collected on this subject, I may yet be permitted to mention our own cases of Commonwealth *v.* Judges of Common Pleas, 3 Binn. 272; Griffith *v.* Cochrane, 5 Binn. 87 ; Commonwealth *v.* Judges of Common Pleas, 1 Serg. & Rawle, 187 ; and Drexel *v.* Mann, 6 Watts & Serg. 386 ; in which the whole doctrine was elaborately discussed and fully considered, and all of which in accordance with more ancient authorities attain the same conclusion, that where the complaint is against a person who acts in a judicial or deliberative capacity, he may be ordered by mandamus to proceed to his duty, by deciding and acting according to the best of his judgment, but the court will not direct him in what manner to decide.    The application of this principle to the present case decides it adversely to the pretensions of the relators ; for although the proceeding assumes the guise of a rule to show cause in the nature of an alternative mandamus against the prothonotary of the Court of Common Pleas, and is said to be warranted by the eighteenth section of the act of the 15th June, 1836, which gives the writ of mandamus against all officers and magistrates elected or appointed in the particular county, it is, in fact, an attempt to coerce the discretion of the court below, in relation to a proposed amendment or alteration of its record.    The paper book shows that the relators, by motion, applied to the proper court, to direct the prothonotary as its officer, to amend the record in the particular sought, and that this motion was denied.    In thus deciding, the court exercised a purely judicial function in a matter eminently and exclusively within its jurisdiction.    To it the law extends the custody of its own records, the supervision of them, and the power of amendment in proper cases, but it confers not this power upon another and a distinct tribunal.    The prothonotary is its mere instrument for the purpose of making corrections and amendments, and can regularly do neither without the direction and authority of the court.    It is the court which is to decide in every instance, when this is proper ; and its officer possesses no discretion whatever over the subject. But here the court decided the very question of the proposed alteration, having that question properly and legally before them.    It

was not whether the officer should ministerially do a particular thing, but whether the forum would permit one of its ancient records to be added to, and thus altered in a material particular. Having determined the question negatively, with what show of propriety could it be called upon to compel its instrument by *mandamus*, to do that it had before decided should not be done? For such a purpose a prothonotary is not a county officer, within the meaning of the act of the 14th June, 1836, but, as I have said, is to be regarded simply as the hand of the court acting by its volition and obeying its behests. To put him in motion in the particular under consideration, the extraordinary remedy by mandamus is not required; and this is another reason why it should not be used. A simple order of the court is all-sufficient for the purpose sought here; for a refusal by its officer to obey it, would be punishable as a contempt. On the other hand, an interference with the record, without the *fiat* of the court, would justly subject the officer for its animadversion. But it is avowed that the object in instituting the present procedure was, not so much to compel the prothonotary to do what we have seen he could not legally do, as to bring before this court for revision the refusal of the Common Pleas to direct the proposed amendment of its record. Such an attempt, however, cannot be attended with success, for with the correctness of that refusal we have nought to do; the law has not intrusted us with power to control the discretion of the inferior tribunals, exercised in reference to the state of their records, and has provided no mode by which they may be brought within this jurisdiction for such a purpose. But if any existed, it is certainly not that adopted by the relators, which in effect seeks the mandate of this court to the Common Pleas, to command its officer to discharge a judicial function to which he is not competent. The attempt is both novel and anomalous, sanctioned by no statute that I am acquainted with, and certainly not in accordance with any principle of the common law.

It was made a question on the argument whether, as no mandamus was in fact issued by the court below, a writ of error can be sued out under the 32d section of the act of 1836? It is not necessary to decide this question in the terms in which it is put, inasmuch as the conclusion to which we have arrived denies, in effect, the power of this court to revise the order of the Common Pleas made in the case.

Wherefore the order made is affirmed.