## Mills *versus* Buchanan.

A party objecting to evidence, is to be confined to the ground of objection taken in the court below.

The declarations of a former owner of land, adjoining to that in dispute, made in the presence of his adjoiner at the time of the running of the line between their lands, that a certain tree was a corner between them, is evidence in an ejectment between the adjoiner and another.

In an action of ejectment, a former claimant and occupant, whose possession was necessary to make up the continuity of adverse possession for twenty-one years, is competent to show that he did not hold adversely to the adjoining owner of the land in dispute in the case.

A party is entitled to such an answer to a point, as is intelligible to the jury.

Where two marked trees exist, and the line from a known corner, by the course of the original survey, will not strike both of them, it is to be run diagonally between them.

ERROR to the District Court of *Allegheny county*.

This was an ejectment for seven acres fifteen and nine-tenths perches of land, by Buchanan *v.* Mills.   Plea not guilty, verdict for plaintiff.   The case was tried before LOWRIE, J.   The land claimed by plaintiff had formerly belonged to George Wallace—that claimed by defendant had belonged to Charles Wallace.

After plaintiff had rested, defendant called Nathaniel Patterson. In 1843, I made a survey of this land.   I commenced at a sugar tree, the corner between the land of Mr. G. Hawkins and Mr. Mills' land.   Mills then claimed one part of the land, and Hawkins the other.   The witness was asked as to the admissions of Hawkins and Mills at the time of the survey—that this sugar tree was a corner between them; the question was objected to as irrelevant.   The objection was sustained, and defendant excepted.

Charles Wallace was sworn on the part of plaintiff.   He stated he once owned defendant's land.   The plaintiff offered to prove that up to 1824 or 1825, there was no line ascertained between the farms, and that there was no intention on the witness' part, of holding adversely to the former owner, but always intending to put their fences on the true line, when it should be ascertained.

Objected to.   Objection overruled, and exception on part of defendant.

On the trial, the defendant presented the following, among other points:

[Mills *v.* Buchanan.]

5. That if the jury believe that the W. O. is the corner of the Braddock's Field survey, and that the two blocked trees, as stated by Patterson, are line trees of the Braddock's Field survey, then the line is from the W. O. by those line trees; and if they are satisfied that the corner on the river is where defendant claims, then the line is to be ascertained by running the course with the proper variation, and the distance from the river comes thence by the next course with the proper variation, until the course intersects the line from the W. O. by the marked trees.

As to this point, the court answered—You may adopt the W. O. and the defendant's point on the river, and yet reject the line indicated by the two blocked trees; and then you may have a difficulty in dividing the surplus among those three lines. Under ordinary circumstances, it would seem to be fair to divide it proportionally among them. Perhaps you will think in this case, that the lower line has lost some by the washing of the river, and is entitled to no surplus. There may be other circumstances which would require some one line to have more than its proportion.

Errors were assigned, *inter alia*, as follows:

To the rejection of the evidence of Patterson, as to the declarations of Hawkins, and of Mills, the defendant, in 1843, as to the sugar tree being the corner between their lands.

That the court erred in admitting the evidence of Charles Wallace, the former owner of defendant's tract, for the purpose of proving that up to 1824 or 1825, there was no line ascertained between the farms; and that there was no intention on the witness' part, of holding adversely to the former owner, but always each intending to put their fences on the true line, when it should be ascertained.

6. That the court erred in answer to defendant's fifth point.

The case was argued by *Woods* and *Hawkins*, for plaintiff in error.

   *Shaler*, for defendant in error.

The opinion of the court was delivered by

COULTER, J.—The first bill of exceptions is in these words:—" Mr. Woods now asks the witness as to the admissions of Mr. Hawkins and Mr. Mills, at the time of the survey, that this sugar tree was a corner between them, and the question is objected to as irrelevant, and the objection is sustained and defendant excepts, and at his instance I seal this bill." The question to be resolved then, is, whether or not the testimony was relevant to the issue; because we cannot go out of the bill of exceptions. We sit here to review the decisions of the court below, on the grounds submit-

[Mills *v.* Buchanan.]

ted to it; and not to make a decision upon new and original ground, not suggested to the court below. In Rowe *v.* Power, *New Rep.* 36, and in 8 *East.* 281, it was resolved that a party objecting to evidence, must be confined to the objection taken at the trial; and in Baring *v.* Shippen, 2 *Binney* 168, it was decided that the general rule is, that the party is confined to the objection taken at the trial, and appearing on the face of the bill of exceptions, and the same point was ruled in Farr *v.* Swan, 2 *Barr* 245. In Wolverton *v.* Commonwealth, 7 *Serg. & Rawle* 277, the same point was under consideration, and it was ruled that a party may be called on to state the ground upon which he rests an objection to the competency of evidence, and if it fail him, that it was not error, although the evidence be incompetent on other grounds; and in Milliken *v.* Barr, 7 *Barr* 23, it was held, that a party will be confined to the ground of objection taken by him to evidence in the court below. In Drexel *v.* Man, 6 *Watts & Serg.* 386, it was held, that a plaintiff in error cannot take any other ground of objection to the competency of the witness, than that assigned in his bill of exceptions and appearing on the record. And the rule must operate with equal force on the other party, the reason being precisely the same, whether the objection to the evidence is made by the plaintiff in error or the defendant. That is, that this court can only decide upon what was ruled below, and not upon other matter not appearing on the record.

Now this sugar tree, according to the draft exhibited, was the corner between Hawkins and Mills at the opposite side of the tract from that where the disputed boundary between Buchanan and Mills is located; and the surveyor testifies that he ran from the sugar tree. Nothing is more common in ascertaining old lines than to start from a marked line or corner on the other end of the tract than that where the difficulty exists. It is sometimes the surest, and sometimes the only way in which a dispute can be accurately settled. There are many surveys in this commonwealth where only one line was run, and very many where a number of surveys have been protracted upon one. In such cases, the only way of ascertaining the locality of these chamber surveys, as they are called, is to commence where the marks of the hand of the surveyor are fixed and certain, and run off the courses and distances. But in all cases of disputed boundary, it is an excellent auxiliary to the surveyor, pertinent and german to the very question to be settled. It has been long practised in settling disputed boundaries by the most experienced surveyors. We cannot decide that the evidence proposed and rejected was irrelevant to the issue. It is true that the objection was enforced here on other grounds, such as, that Mills was interested, being a party, and that Hawkins would be benefited also, by having the disputed boundary settled upon the basis of the sugar tree being a corner, and that being declarations not on

F

[Mills *v.* Buchanan.]

oath, they could not be admitted. But this cannot help the defendant in error. These are not taken as the objections on the bill of exceptions; and according to many adjudicated cases, we cannot now consider them. I may say, however, that declarations made on the ground that such and such tree was a corner or a line tree, have often been received in evidence in cases of disputed boundary when such person was dead. In Caufman *v.* Cedar Spring, 6 *Binn.* 59, it was held that what has been said by a deceased person in relation to a boundary is receivable as evidence; and the same thing was held in 11 *Serg. & Rawle* 149. And in Hamilton *v.* Menor, 2 *Serg. & Rawle* 70, it was decided that declarations of a person living and who might be produced, were not evidence; but whether Hawkins was living or dead does not appear, nor is it made the ground of objection in the bill of exceptions. If that exception had been taken below, possibly it might have been removed, from which it would perhaps be a reasonable inference that he was dead, as the whole objection was rested on the ground of the declarations being irrelevant.

Hawkins or his representatives could have no interest whatever in the verdict or event of the suit. He might have a remote, possible, contingent interest in the question. The objection, therefore, would be to his credibility, not to his competency : 6 *Binney* 319; 10 *Barr* 167. But the evidence offered was relevant to the issue, and therefore the rejection of it, on the ground of its being irrelevant, was erroneous.

There is no weight in the fourth error assigned. Wallace was one of the occupants whose possession was necessary to make up the continuity of adverse and hostile possession for 21 years. But he swears distinctly that he did not hold adversely to his brother, but that each occupied according to the fences, knowing that the line was then uncertain, and with a mutual understanding that when they should have the line fixed, that each should conform to it. This wears no color of an adverse hostile possession, but directly the contrary. It is of no consequence whether this mutual understanding was known to those who afterwards claimed the land. Because title could not be acquired without the existence of the fact upon which it must necessarily be founded. There is nothing in the second, third and fifth errors that requires any comment : they are overruled.

The sixth is more massive and is pregnant with matter bearing on the merits of the case. The counsel for the defendant submits to the court a plain point on which he requests the instruction of the court to the jury. He was entitled to a plain answer to that point, in a manner that would be intelligible to the jury. But it appears to me that he has not answered the important part of that point, *but* that the answer is confused, so that a jury could not make out its import. Indeed, the counsel for the defendant in

[Mills *v.* Buchanan.]

'error admits on his printed statement that the answer is obscurely expressed, but that it is sufficiently clear. That which is obscure may be sufficiently clear to learned and ingenious counsel who can extract from it something that answers their cause. But it ought to be so plain that plain men, such as jurors, would see no difficulty or obscurity in it, otherwise, instead of being a lamp to their feet and to their eyes, it may lead them astray. The point is as follows : " If the jury believe that the white oak is the corner of Braddock's Field survey, and that the two blocked trees, as stated by Patterson, are the lines of the Braddock's Field survey, then the line is from the white oak by those line trees ; and if they are satisfied that the corner on the river is where the defendant claims, then the line is to be ascertained by running the course, with the proper variation and the distance from the river corner, thence by the next course, with the proper variation, until the course intersects the line from the white oak by the marked trees." Here is a very intellibible question, bearing directly on the merits of the controversy. To which the court answer to the jury : "You may adopt the W. O. and the defendant's point on the river, and yet reject the line indicated by the two blocked trees. And then you may have a difficulty in dividing the surplus among those three lines," and tells them that under ordinary circumstances it would be fair to divide it proportionably among them. This part is not an answer to any thing proposed in the defendant's point. By which, I suppose, the court meant that as there would be more distance between the river and the white oak than would fill up these courses, that they should divide that overplus distance *pro rata* among the three courses.

But although the court answers to something not asked, it does not answer the gist of the inquiry proposed. That is, whether, if the jury believe that the W. O. was the corner of the Braddock's Field survey, and the two blocked trees are the line trees of that survey, as stated by Patterson, then the line is from the W. O. by those blocked line trees, running the course and distance with the proper variation. The basis of the inquiry is, that if the blocked trees were the line marked by the surveyor, that then that line must prevail. It was earnestly contended, that the jury were the judges whether the marked trees were line trees or not, and so undoubtedly they were. But the instruction prayed for, is predicated on the fact of the jury believing them to be marked trees on the Braddock's Field ; and if they should so believe, whether they ought not to be the true line and prevail over the course and distance returned. This is the real substantial inquiry, an inquiry which has often been answered in our books. But the court did not give the answer which the inquiry receives in our books. But they answer, you may adopt the white oak and the defendant's point on the river, and yet reject the line indicated by the blocked

[Mills *v.* Buchanan.]

trees. That is, even although you should be of opinion that they are the line trees on the Braddock's Field survey. For that is the necessary implication and inference, because the question is, if the jury believe they are the line trees of the Braddock's Field survey, as testified by Patterson, whether they did not indicate the true line. The answer is, in effect, no : you may adopt the white oak and defendant's point on the river and reject those line trees, but he gives no reason for it.

These trees were marked at the same date that the white corner was marked in 1769, some eighty years ago, from which a strong inference would arise that they were marked by the same person at the same time, and were line trees, but that was for the jury. The court ought to have told the jury that if they believed those blocked and marked trees were lines of the Braddock's Field survey, that they indicated its location and were the real survey, and that they must prevail over the courses and distances returned. But that if they did not believe that they were marks of the survey made on the ground at the time, then they would reject them and adopt the returned survey. I may say that the circumstance of those marks being some distance from the geometrical lines, as claimed by the plaintiff or defendant, is of little consequence, because the rule is that the marked or artificial lines made by the surveyor constitute the true survey and must be followed. There would be no sense or reason in the rule, if the marks must be on the line returned. They must prevail *over* it. Taking a course between these *trees* diagonally, it seems there would be little variation and but a short distance from the line thus indicated. The courses and distances run on the ground are the true survey : 1 *Yeates* 28. Same point, 2 *Yeates* 311; 5 *Serg. & Rawle* 81, and 4 *Serg. & Rawle* 456. It is held that when the courses and distances expressed in a return of survey differ from the natural and artificial boundaries on the ground, the latter must prevail. This case has been followed by many others, which it is unnecessary to enumerate. It is the law. Then if the jury believed that these blocked and marked trees were the line of Braddock's Field survey, made by the surveyor at the time, the jury could not disregard them; they were the true line, and so the court ought to have told the jury.

I have known many surveys where the lines on the ground included from twenty to fifty acres more than the return called for.

Judgment reversed and *venire de novo* awarded.