THOMAS

*v.*

M'CAHAN.

*(Circuit Court of Prince Edward County, Va., March, 1877.)*

[Virginia Law Journal, 1877, p. 187.]

Waiver of Homestead—Statute Allowing Unconstitutional.

The provision of the Code of 1873, contained in sec. 3, chapter 183, page 1169, for a waiver of the homestead exemption conferred by the constitution of Virginia, is unconstitutional and void.

DICKINSON, J., delivered the opinion of the court.

The constitution of Virginia provides that "every householder or head of a family shall be entitled to hold, exempt from levy," property "not exceeding $2,000, to be selected by him," with certain specified exceptions. Art. XI, sec. 1.

This is confined to a "householder or head of a family." For what purpose? Manifestly, in the interests of society, and for the comfort, maintenance and shelter of the family, as well as the head of that family ; and hence the discrimination made by the constitution between "householders or heads of families," and other debtors not thus situated. And for that reason, doubtless, it was wisely provided that the general assembly shall prescribe in what manner, and on what conditions, the said "householder or head of a family" shall thereafter set apart and hold for himself and family a homestead out of any property hereby exempted ; and may, in its discretion, determine in what manner and on

what conditions he may thereafter hold for the benefit of himself and family such personal property as he may have, and coming within the exemption hereby made.    Art. XI, sec. 5.

If the constitution had stopped here, there might be much force in the view that the "householder or head of a family" might waive the benefit of, or otherwise encumber the said homestead.    But the same section goes on to provide that "this section shall not be construed as authorizing the general assembly to defeat or impair the benefits intended to be conferred by the provisions of this article ;" and the 7th section requires that "the provisions of this article shall be construed liberally, to the end that all the intents thereof shall be fully and perfectly carried out."

The authority to "prescribe in what manner and on what conditions" the homestead may be set apart and held for "himself and family," is limited and controlled by the subsequent clause of the same section, which inhibits the general assembly from "defeating or impairing the benefits intended to be conferred."

What were those benefits ?    Clearly, to secure to every family a home and the ordinary means of support, and to protect them in those pursuits necessary to the existence and well-being of every community.    The power to do so must reside in every state.    Taney, Ch. J., in Brownson v. Kinzie, 1 How. 311.    It was to effectuate this purpose that the constitution pointed out the mode of its own construction—i. e., "liberally, to the end that all the intents thereof be fully and perfectly carried out."

The object clearly was to secure to the family, as well as the head, a home and shelter from want and exposure, and to make that provision permanent by providing that it shall be held for the benefit of "himself and family ;" not "impaired or defeated ;" not parted with, given or conveyed

away ; not destroyed by "waiving its benefits" to the exclusion and deprivation of those tender and helpless members of the family who were the chief objects of care and concern to the framers of the constitution ; but "held," kept, retained, secured.    The terms implies fixedness, permanence, stability, security,   continuity.

The only authority the general assembly has over the subject is derived from section 5 of article XI, which limits their power to prescribing the manner and conditions of "setting apart" and "holding" the homestead for the "householder or head of a family" and "his family."

In pursuance of the authority thereby conferred, the general assembly proceeded to "prescribe 'in what manner and on what conditions' the homestead should be set apart," &c. (Sessions Acts 1869–70, chap. 157, § 1, p. 198), and in the same statute declared that "it shall continue after his (the householder's) death for the benefit of the widow and children of the deceased," &c. (Code 1873, p. 1171, ch. 183, sec. 8), and "if such householder or head of a family shall have departed this life since the adoption of the present constitution, leaving a widow or infant children, and such homestead shall have not been selected or assigned in the lifetime of such householder," the widow or such infant children shall be entitled to claim the same.   Code, p. 1172, ch. 183, sec. 10.

The 7th section of the same act points out the only mode by which the "homestead so set apart," may be encumbered or aliened.    In the case of a married man, it requires a joint deed of husband and wife, with privy examination of the wife.

Both the constitutions and the act of assembly referred to, recognize "the family," as interested in, and entitled to, the benefit of the "homestead."   The authority to waive such benefit, by one member of the family, intended to be

provided for, to the exclusion and detriment of others jointly interested, would be to "defeat and impair" the benefits intended to be conferred by art. XI, which by its terms should be construed liberally, to the end that all the intents thereof may be "fully and perfectly carried out."

The object and intent of the "waiver," is to "defeat and impair" the benefits of the homestead *"pro tanto."* If this purpose is not to be effectuated, then it is nugatory and void ; if it is to be effectuated, then it is contrary to the 5th sec. of art. XI of the constitution.

If a total "waiver" of the benefits intended to be conferred, does not "impair or defeat" it, I am at a loss to conceive what language will express that purpose. There might be plausibility for such a construction, if "the benefits intended to be conferred," were confined to the "head of the family." But they are equally intended for his family, and the act itself recognizes this by providing for its assignment, even after the death of the "head of the family," and its continuance "till the youngest child becomes 21 years of age."

The third section of article XI provides that "nothing contained therein shall be construed to interfere with the sale of the property aforesaid, or any part thereof, by virtue of 'any mortgage, deed of trust, pledge, or other security thereon.'"

And it is insisted that this section was intended to give to the "householder or head of a family," the right to encumber the homestead by "mortgage, deed of trust, pledge, or other security." I do not so understand it. The constitution meant to leave the property liable to existing liens, and not to create new liens to the destruction of the rights of homestead to the family by one member of that family in disregard of the interests of others. The general

assembly must so have understood it, when they provided the mode of encumbering the same by joint deed of husband and wife, and investing the proceeds of any sale made thereof in "another homestead." The stipulation in a promissory note "to waive the benefit" of an exemption, "*in futuro*," of a homestead not yet assigned or set apart, is an executory contract which cannot operate as an estoppel from subsequently claiming the exemption. (See Moxley v. Ragun et al. recently decided by "the court of appeals" of Kentucky, and not yet reported. American Law Register, December, 1874, p. 743.) Shapley v. Abbot, 42 N. Y. Rep. Such an agreement is in disregard of the policy of the law, and if operative annuls the law itself, so far as it affects the debt sought to be recovered. If upheld, the homestead exemption would be a blank upon our statute-book, and deprive the destitute of all claim they have to its beneficent provisions.

A stipulation in a note never to take the benefit of the bankrupt law, or that land should be forfeited and never after subject to redemption, could not be enforced or work an estoppel. An agreement to waive this right is illegal and void ; must be regarded as made under a species of duress between parties in unequal circumstances, in which the creditor has great facility for gaining an unjust advantage over the oppressed debtor ; is liable to general abuse by creditors, which cannot be properly upheld by the courts.

Judge Redfield's note in American Law Register, Dec., 1874, p. 746.

"The law does not permit its process to be used to accomplish ends which its policy forbids, though the parties may, by a prospective contract, agree to such use." Dennis, Jr., in "Knutter v. Newcomb," 31 Barbour, 170 ; 9 Howard, 547.

I am full well aware of the delicacy of the task of hold-

ing an act of the legislature void, and enter upon it with reluctance and hesitation.

The courts sit not to revise or review legislative action, but to enforce legislative will; and in declaring what is the law, they must enforce the constitution as the paramount law whenever the legislative action comes in conflict with it. "Rice v. State," 7 Ind. 334 ; "Bloodgood v. Mohawk and Hudson Railroad Company," 18 Wend. 53 ; "Cooley on Cons. Limitations," page 160.     Note 1.

It is the duty of the court, in a proper case, so to declare. *Ita scripta lex* is imperative and controlling.

In the act under consideration, the legislature has undertaken to exercise a power which the people, by the constitution, have been careful to withhold, in providing for a "waiver of the homestead," in the face of a positive inhibition upon them, to "defeat or impair the benefits intended to be conferred" thereby.

It is much to be regretted that the court of last resort in this state has not pronounced any opinion on this question. I regret it the more, since, by a singular coincidence, it has fallen to my lot to take the initiative in deciding several of the most delicate and difficult questions which have arisen under the new constitution, in advance of any expressed opinion of the supreme court, or any other circuit judge of the state. It is a relief to me to know that any error I may commit can be corrected by a higher tribunal.     *     *

(Judge Dickinson then refers to Judge Bouldin's opinion in Sirely by, &c., *v*. Campbell, &c., 23 Gratt. 902, and says that an intimation is there given that if the requirement of the purchaser to waive the homestead exemption had prejudiced the appellant, the court of appeals would have corrected the decree in that respect.)—Ed.

Upon a review of the whole subject, yielding every doubt in favor of legislative power, so much of sec. 3 of

chap. 183 of Code of 1873, p. 1169, as provides for a "waiver of the homestead exemption," is to my mind so clearly intended to "defeat and impair the benefits intended to be conferred by the provisions of art. XI, sec. 5 of the constitution, I am constrained to regard it as unconstitutional and void.

*Note by the Court.*—The supreme court of Georgia has recently decided that, "The homestead (in this state) cannot be alienated even by order of court, except for the purpose of changing the investment. The act of the legislature which permits parties to waive the homestead, and to dispose of property which had been set apart, under the exemption law, was unconstitutional."